IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **MICHAEL SHANE STEPHENS** | § | **PLAINTIFF** |
| | § | |
| v. | § | **CAUSE NO. 1:07CV96 LG-JMR** |
| | § | |
| **HARRISON COUNTY, MISSISSIPPI,** | § | |
| **ET AL.** | § | **DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION FOR SUMMARY JUDGMENT

THE MATTER BEFORE THE COURT is the Motion for Summary Judgment [35] filed by Defendant Harrison County, Mississippi. The Plaintiff has filed a response. After due consideration of the submissions and the relevant law, it is the Court's opinion that the Motion should be granted.

DISCUSSION

Plaintiff Michael Stephens filed this suit alleging that, at the end of a high-speed chase, he had been kicked, hit, dragged over a barbed wire fence, rammed head-first into trees, and his head "stomped" on by unknown sheriff's deputies employed by Harrison County, Mississippi. Compl. 3. He alleges this occurred at 11 p.m. on February 5, 2004, after he refused to stop for a Harrison County sheriff's deputy following him on Interstate 10. *Id*. at 2. He "refused to stop and a pursuit ensued which lasted for approximately 15 minutes." *Id.* Plaintiff does not describe how his vehicle came to be stopped, but alleges that when it did, he got out and then became airborne when one of the officers struck him and the car door of his vehicle. *Id*. Plaintiff alleges that "as a result . . . [he] began running into the woods." *Id*. at 3. He surrendered when one of the deputies told him to lie down or he would be shot. *Id.* Plaintiff asserts that the arresting deputies treatment of him was in violation of his constitutional rights. He alleges that George

Payne, then-Sheriff of Harrison County, created policies and customs that were the moving force for these constitutional violations. Stephens's claims are brought pursuant to 42 U.S.C. § 1983 for violation of the 4th, 5th and 14th Amendments to the United States Constitution. Stephens may also have alleged a state-law claim of negligent hiring, training and supervision against Harrison County. *See id.* at 5.

Harrison County has moved for summary judgment pursuant to FED. R. CIV. P. 56(e), asserting that the uncontroverted evidence establishes that Stephens was not deprived of a constitutional right by Harrison County. Therefore, Harrison County asserts it is entitled to judgment in its favor in regard to all claims brought against it by Stephens.

The Legal Standard:

Summary judgment is mandated against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party has the burden of proof at trial. FED. R. CIV. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Factual controversies are resolved in favor of the nonmoving party, but only when there is an actual controversy; that is, when both parties have submitted evidence of contradictory facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The Plaintiff has submitted a short brief consisting of argument, but no evidence in opposition to Harrison County's Motion and supporting evidence.

The Summary Judgment Evidence:

Harrison County concedes that its deputy sheriffs began the chase at issue here in Harrison County, but as Stephens traveled toward Hancock County, Hancock County deputies joined in, ended the chase and apprehended Stephens. Therefore, no Harrison County officer

committed any act Stephens complains of. Harrison County has submitted affidavit or deposition testimony from all of the deputies involved.

A. Harrison County Deputies:

Harrison County Deputy Gene Dedeaux states that at approximately 11:00 p.m. on February 5, 2004, he observed Stephens's vehicle changing lanes without signaling. Ct. R. 37-2 p. 1. He turned on his blue lights and siren, but Stephens did not stop. *Id*. at 2. After pursuing the vehicle approximately six miles west on Interstate 10, Dedeaux was joined by Harrison County Deputy Lt. Tony Sauro, who turned on his blue lights while driving in front of Stephens' vehicle. *Id.* Stephens attempted to hit Sauro's patrol car and ran off the Interstate to the right. *Id.* Stephens then "took off again westbound." *Id.* Harrison County Dispatch radioed the Hancock County Sheriff's Department for assistance. *Id.*

Harrison County Lt. Deputy Tony Sauro states that after being notified via police radio that Dedeaux was in pursuit of a vehicle westbound on Interstate 10, he observed the two vehicles approaching him from behind. Ct. R. 37-3 p. 2. He activated his blue lights. *Id.* Stephens attempted to ram Sauro's vehicle, lost control, spun out, and came to a stop on the grassy area on the right side of Interstate 10 westbound. Stephens "then spun out and continued westbound." *Id.* Sauro and Dedeaux continued the pursuit. *Id.* As the vehicles entered Hancock County, Hancock County deputies took over the lead in the pursuit. *Id.* Hancock County deputies had placed "stop sticks" on the Interstate at the 2-mile marker. *Id.* When Stephens's vehicle ran over the stop sticks, he lost control and skidded off the edge of the road. *Id*. Immediately after Stephens' vehicle came to a stop, Sauro observed a Hancock County patrol car slide through the mud and sideswipe Stephens' vehicle. *Id.* Stephens then got out of his

vehicle and fled into the wooded area. *Id*. Sauro and Dedeaux noticed that the Hancock County patrol car was marked as a K-9 unit. *Id.*; Ct. R. 37-2 p. 2. They decided to wait by the roadside, as they were under the impression that a canine was assisting in the search for Stephens. *Id.* Hancock County deputies brought Stephens out of the woods onto the shoulder of the Interstate, where they turned custody of Stephens over to Dedeaux. Ct. R. 37-3 p. 3. Dedeaux transported Stephens to the Harrison County Adult Detention Center without incident. Ct. R. 37-2 p. 3.

### B. Hancock County Deputies:

In addition to the affidavits of the two Harrison County deputies, Harrison County submitted the affidavit of Danny Gilkerson, one of the Hancock County deputies, and the deposition testimony of James Esposito, the second Hancock County deputy involved.

Hancock County Deputy Gilkerson stated that he joined the pursuit as Stephens's vehicle entered Hancock County. Ct. R. 37-4 p. 2. The Harrison County patrol cars followed behind Gilkerson. *Id.* Gilkerson passed Stephens's vehicle as it came to a stop off the Interstate. *Id.* As Gilkerson drove back to the scene, he noticed a flashlight beam in the woods to the North of the Interstate. *Id.* He went on foot into the woods, where he saw deputy Esposito handcuffing Stephens on the North side of a fence topped with barbed wire. *Id.* Gilkerson remained on the South side of the fence while Esposito cut the barbed wire from the fence to allow Stephens to step over it while handcuffed. *Id.* Gilkerson escorted Stephens back to the patrol cars, where he turned Stephens over to deputy Dedeaux. *Id*. at 3.

Hancock County Deputy Esposito testified that he was directly behind Stephens's vehicle as it came into Hancock County. Ct. R. 37-5 p. 7. He pursued Stephens for approximately 12 miles. *Id.* After Stephens's vehicle ran over the stop sticks, his vehicle came to a rest - "not just

-4-

right off the shoulder" but "all the way down into the ditch and up by the wood line." *Id*. at 8-9. As Esposito brought his vehicle to a stop, he slid into Stephens's vehicle. *Id.* at 8. At the moment of impact, Stephens "opened his door and I hit his door, [and] he came out and went over the front of my vehicle." *Id*. at 9. Esposito got out of his patrol car expecting to find Stephens at the rear, but he was gone. *Id*. Esposito followed Stephens into the woods. *Id.* Esposito located Stephens as Stephens was trying to get over a fence that was about 15 yards inside the wood line. *Id*. at 10. The fence was "like you would find on a farm, the square stuff with the barbed wire across the top of it." *Id.* Stephens was "wrapped up in the fence trying to get over it." *Id*. at 11. Esposito told Stephens to "stop or I was going to send my K-9" and Stephens gave up. *Id.* Esposito testified:

> When I approached him from the rear, I jumped down on his waist to subdue him. When I went to subdue him, he started screaming and flailing around. I reached out to grab his arm, got it behind him and calmed him down, and that was it.

*Id.* at 12. Esposito described working with deputy Gilkerson to get Stephens across the fence, then letting Gilkerson take Stephens out to the patrol cars while he went back across the fence to find items he had lost during the arrest. *Id*. at 14.

Plaintiff's Section 1983 Claims Against Harrison County:

A governmental entity such as Harrison County, Mississippi, can only be held liable in an action under § 1983 if there is either an unconstitutional action by official policymakers or a policy or custom that caused the deprivation of a constitutional right. *Monell v. Dept. of Soc. Svcs.,* 436 U.S. 658, 694 (1978); *Johnson v. Deep East Tex. Reg. Narcotics Trafficking Task Force,* 379 F.3d 293, 309 (5th Cir. 2004). Governmental liability on a claim brought under § 1983 requires proof of three elements: 1) a policymaker; 2) an official policy; and 3) a violation

of constitutional rights whose "moving force" is the policy or custom. *Monell,* 436 U.S. at 694; *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001).

The uncontroverted evidence in this case shows that no Harrison County personnel were involved in Stephens's arrest, which is when all of the alleged unconstitutional actions took place. Stephens has provided no evidence in support of his allegations that an act of abuse was committed by any Harrison County deputy. Thus, he can show no deprivation of a constitutional right by Harrison County. "Although [section 1983] provides the citizen with an effective remedy against those abuses of state power that violate federal law, it does not provide a remedy for abuses that do not violate federal law." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 119 (1992) (citations omitted). Accordingly, Plaintiff's § 1983 claims against Harrison County must fail.

State-Law Claim:

To the extent that Stephens may have alleged a negligent hiring, training and retention claim under state law, Harrison County asserts that its personnel had no involvement in the complained of actions. Therefore, its hiring, training and retention policies have no relevance to this lawsuit. Stephens does not make any argument in opposition.

The Mississippi Supreme Court observed that a "claim of negligent hiring, retention, and supervision ... is simply a negligence claim, requiring a finding of duty, breach, causation and damage." *Roman Catholic Diocese of Jackson v. Morrison,* 905 So.2d 1213, 1229 (Miss. 2005). Clearly, with all of the evidence submitted showing that Harrison County personnel were not involved in the actions Stephens complains of, he will be unable to show any of the elements of a negligence action. Accordingly, Harrison County is entitled to judgment as a matter of law to the

extent that the Complaint can be read to allege a state-law claim of negligent hiring, training and retention.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion to Dismiss, or in the Alternative, for Summary Judgment [35] filed by Harrison County, Mississippi, is **GRANTED**. Plaintiff's claims against Harrison County, Mississippi are **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED** this the 5th day of March, 2009.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE